May it please the Court, Alan Broidy on behalf of Appellant Martin Kapp. Your Honor, I would like to reserve five minutes for rebuttal, if I may. The issue that's addressed before this Court is whether the injunction which was entered against Appellant regarding the so-called Mariner's deduction, which is a term of art which was created by the government, should somehow be enforced against Appellant. Notwithstanding that there was no prior issue or warning with respect to proceeding with that case, and at the same time that the government was seeking an injunction, which is a drastic and severe remedy, at the same time it was proceeding with an injunction, there was a tax court case that was pending that would have resolved the issue and would have made the injunction moot. That case's cases are Spillett and Bala. And as a result of those cases, there was an express finding from the tax court that said that taking deductions when the employer provides the meal for free for the tug-and-barge sailors is not permitted. As a result of that express finding, there would have been no need to go forward with the injunction, and the matter could have been resolved. I want to understand the injunction. Does it only apply to taking the so-called Mariner's tax deduction? Is it narrow to that extent? Well, it is not narrow. It is overbroad in the following sense, because it's not just Mariner's tax deduction. It also applies to any deduction that a Mariner may take. And there were two examples that come into play. Wait. Any deduction that a Mariner might take without? Take with respect to free meals under the interpretation. Without having incurred the expense of the meal. That's correct. And therefore, that would preclude a Mariner, for example, who went into a hotel and got free happy hour and free breakfast and free happy hour, kind of like the Border Patrol analogy set forth in the brief. That Mariner would not be allowed to take that deduction, even though every other Mariner, every other person would be permitted to take such a deduction under Federal Travel Regulation 301.11.17. Well, what I see, what I don't understand is when reading the injunction, it seems as though it's only in joining your client from doing something that definitely would violate the tax code, which is from preparing tax returns that have a Mariner's tax deduction when no expenses have been paid or incurred. Well, Your Honor, that's not necessarily correct. Because whether or not it violates the tax code is something that's been determined now. But at the time of the case itself, there was a question whether or not Mr. — whether or not the appellant had a good-faith belief with respect to this. And looking at very much how the court and how the tax court in Bollitt and Spillett interpreted Section 301.11.17 is significant. In the district court opinion, there was a decision saying, well, 301.11.17 only applies to transporters, not to employers. They made that distinction. And that distinction is nowhere supported other than in the judge's own statement. Yet in the very decision of Zballa itself, there is reference that there is an express finding that says the container ship here is not a common carrier. Now, that finding is very surprising inasmuch as a cargo ship would seem to be the paradigmatic model of a container, of a container would be a common carrier. But notwithstanding that fact, they were saying that had the ship in question been a common carrier, then 301.11.17 would have come into play. And, in fact, they go on further to state by going to cite to 301.11.18 that if it did apply, however, the payments that were made would have to be deducted from the per diem. That is consistent with the government's position on page 45 of its brief that says you would have to reduce it by that particular, by a particular amount by the employer. But yet all of those positions are contrasted by the very testimony, by the evidence and the undisputed evidence regarding the communications between Christian Wood, a high-ranking IRS official at the national office who wrote Revenue Procedure 2004-60, and Jim Hart, who was a national deputy director of the GSA, the General Service Administration, who is specifically authorized to help implement the FTRs. And communication in such forth to Mr. Wood made it very clear that the view of Mr. Hart was that if, in fact, there were payments in that regard under 11B, it would not affect the per diem. And that's expressly stated because in the very language of 110301.11.118, it says, except as provided in section 11.117. Kennedy. Well, can we get to the heart of this case? Didn't Mr. Capp persist in taking the Mariners' deduction in tax returns that were then disallowed? The taking of that deduction was disallowed repeatedly, was it not? No, that is not the case, Your Honor. It was not. Mr. Capp, there was initial contact in March of 2005, and there was subsequent correspondence between Mr. Capp and with Mr. Campos at the IRS. In August, he was saying, look, you know, I've spoken with the higher people, the higher-ups at the national office in Washington, D.C. They put his arm around each other and said, okay, now I understand. Everything is going to be okay. And he continued taking those after that discussion. It was only then when he got served with a copy of the complaint with what was going on, which was shocking. This is the whole issue here about whether Mr. Capp really was acting in good faith. Now, there's no question that you can never take the deduction now. The court has ruled, the tax court has made it clear. The question is, did he take the deduction prior to the filing of the lawsuit and under circumstances where it was disallowed? Did he take the deduction prior to the filing of the lawsuit? Yes, he did. And was the deduction disallowed? There was. To date, I know there are things that are under audit. I'm not aware of any case where the deduction has been disallowed. The exception, of course, would be no. Excuse me. I misspoke. There were a few cases, Bala and Spillett in particular, which were tax returns were filed before the lawsuit was ultimately disallowed. But what's so significant is that even in Spillett itself, had the case, had the court found that the ship that Spillett was on would have been a common carrier, then they presumably would have applied 301.11.17 and they would have permitted it to be done. Now, there's different interpretations regarding 301.11.17 between the district court, between the tax court, between the government in filing this action, and between the interpretation of Mr. Hart. The bottom line, however, is that Mr. Kapp has acted in good faith with respect to all these matters. These are not the actions of a tax cheat, of someone who is out to defraud the government. What did he do? He spoke to Christian Wood, the person who wrote the revenue procedure in question, 2004-60, at the highest level to get confirmation of information. He spoke to Jim Hart, the national director, the actual district director in Washington, D.C., of the GSA, which is in charge of interpreting this. If he was out to be a tax cheat, why would he be speaking to the highest-ranking people possible to get clarification of what admittedly is a complex issue? This is not the action of someone who's out to try and rip off the government, so to speak. It's the action of someone who legitimately wants to know what the law is and is acting in good faith in order to make these determinations. This is particularly true, you know, inasmuch that the good faith is included not only in the various matters that he did with speaking to these high people, but also on advice of counsel under the Swayze decision. This was a summary judgment change. Did his counsel send him a memo saying that what he was doing was illegal? Did his counsel send him a memo? Didn't it say it was not lawful to take these deductions? Oh, Your Honor is referring to the draft memo from Perez. Right. That was a draft memo, which was not the advice that he was relying on previously, because he had spoken to Ellen Palmer and to other counsel with respect to this matter who was handling this. That was and that and the information that he received said it was okay. The draft memo from Perez was more of a working memo, not signed, a draft, and not ultimately final. But here, again, because by its very nature the issue of good faith is going to be based upon a question of fact, which would require that the injunction be reversed. I note that I only have four and a half minutes left. I would very much like to reserve that time for everybody. Let me do that. Good morning, Your Honors. Gretchen Wolfinger for the United States. The briefs in this case are somewhat certainly lengthy and complex, as I suppose befits a tax case, but the crux of this appeal is quite simple. Could Mr. Capp claim an unreimbursed business expense on behalf of his clients when they never incurred those expenses? The answer to that question is quite clearly no. Section 162 of the Internal Revenue Code does not authorize that, never has, and I suspect never will. And the tax court decisions and the revenue procedures are consistent with that over time. There's not much doubt about the legal proposition, but what's the justification for an injunction? Isn't it enough to say you can't do this? You can't do it without an injunction? Yes. Okay. And in respect to your question, if I could also answer a question I believe that Judge Wardlaw asked. The injunction in this case only goes to Mr. Capp's use of the Mariner's deduction. It is not a more broader sweeping injunction against him as a tax preparer. And I'm not sure if that was the intent of your question, Your Honor. Permitting him from acting as a tax preparer in general just goes to the use of the Mariner's tax deduction. I think an injunction was required in this case for several reasons. Number one, Mr. Capp had a fairly substantial business using these or claiming these deductions on behalf of a large number of clients, which was creating quite a harm to the public fisc. Number two, Congress has recognized this as a significant problem and has authorized the use of an injunction. And thirdly, I think it's quite clear in our brief that there was no good faith on Mr. Capp's part, that he was going to continue to do this absent an injunction, that his word as expressed to the Internal Revenue Service by previous counsels saying that, although he had a good faith belief that the deduction was valid, he would stop claiming it. He, in fact, went back on that word and continued to claim the injunction even after suit had been filed in this case. And that's discussed at some length in our brief. So I think this is the perfect case where an injunction was required, not only because of the amount of harm to the fisc, but because of the actions of the tax preparer himself. I guess that Mariner's tax deduction doesn't have a definition in the tax code. And I'm wondering if what Mr. Capp is prohibited from doing in the injunction is clearly delineated enough, because it seems to be a deduction of his own creation. It seems to be, I'm sorry? A deduction of his own creation. It's not a defined. No, I think the injunction is clear. I think that Mr. Capp cannot claim a deduction for an unreimbursed business deduction when the client is a Mariner who is receiving meals provided by his employer and, therefore, is incurring no expense. And so the consequences of the injunction is that if he would take that deduction again, this time you could go back to the district court and hold him in contempt. Is that? I believe that would be one of the possible remedies, yes. Thank you. With regard to the issue of good faith, again, I think it's discussed at length in our brief, but I think it's clear that there was no good faith. There were discussions with various government officials, but they do not fall within the scope of the regulation regarding tax preparers. And at bottom, number one, they gave no real advice to Mr. Capp. And, in fact, several government officials said we can't review your newsletter article, we can't meet with you. And, secondly, the true facts, the full extent of the facts were never disclosed to the people purportedly giving Mr. Capp advice. He never said, I would like to claim an unreimbursed business expense deduction when no expenses were ever incurred. Well, were returns that he prepared with the deduction on it audited by the IRS? Yes, I believe that several were. So did they go back to him then and say these returns do not pass muster under the code? Did he know that the deduction was being disallowed? I believe that there were several cases, and I think they're discussed at page 1405 of our brief. But certainly during the course of what I'll refer to as the administrative proceedings, prior to the injunction suit being filed, the Internal Revenue Service was telling him that the deduction was not acceptable. And, in fact ---- Did he take the deduction after having been told by the IRS that it was not acceptable? Yes, I believe he did, or he at least after the injunction suit was filed, he continued to represent people in connection with that deduction, yes. Oh, and with regard to the extensive discussion that opposing counsel had about the common carrier regulation and how that would apply to his client, it's clear that we're talking about two different things. A per diem and what might be deducted from a per diem allowance when expenses are incurred versus the situation with Mr. Kaff's client when expenses were never incurred. Beyond that, he refers to the Bala and, I'll say, Sublute case. Both of those were decided by tax court. The tax court indicated that these were not novel issues. In fact, said that they were foreshadowed by the decision in Johnson. And as far as I can tell from Pacer, those cases are now final. So it doesn't matter what might have been. What, in fact, occurred was decisions by the tax court in those two cases that were completely consistent with the revenue rulings, the statute, and prior tax court cases. If there are no further questions from the panel? No. Thank you very much, counsel. Thank you. Your Honor, there is no basis to proceed with this injunction. It's not required right now to enjoin the particular behavior. As a result of the decisions of Zbillet and of what's taking place, it is now where the employer provides meals for free is not permitted. The only thing, had the government simply waited until the court had reached its decision in Zbillet, we would not be here today. The injunction as it is crafted is overbroad, and it causes great harm to appellant personally. As set forth in the supplemental record, the IRS is now seeking penalties of over $4 million against Mr. Kapp. They have levied his home, and they have taken every possible action to collect these sums for doing something that should not have ever been done in the first place. It is punitive. It is overbroad, even with the examples of setting forth, you know, if you're dealing with a seaplane, is that a pilot that you can advise, or is it a mariner who you can't? Because of the scope of the injunction itself, Mr. Kapp was concluded. But how does the injunction affect potential liability for penalties or other liens or whatever the IRS is doing in terms of trying to collect taxes that they believe were wrongfully withheld? The IRS, the injunction does not affect the ability of the IRS to collect those taxes. But how does having the injunction in place affect either their ability to proceed or Mr. Kapp's ability to defend? With respect to the, if they were to audit the returns, there is not a problem because the IRS has made it very clear, and as a result of its billet, and as a result of its own statement in 2008 saying that it is not permitted to be, for a mariner to be able to claim any deduction if the employer provides the meals for free. Because of that, and because of that issue, the injunction isn't necessary as an enforcement issue for the IRS to collect any of its alleged past due sums for improper deductions. The only thing the injunction does is prevent Mr. Kapp from being able to assist people who are facing these deductions. Under the terms of the injunction, he can't even assist them or advise them. He's precluded from talking to them. He was precluded from assisting Ellen Palmer, Townsville's billet, in handling the appellate brief because of the scope of the injunction. It's overbroad, it's not necessary, and the only thing it does is create a punitive matter against Mr. Kapp. Again, had the government simply waited, we would not even be here today, and there It is, this is a case, Your Honor, that cries out for justice from a place where the Department of Justice has not provided it here. This is a case where an individual has devoted his life, is at 59 and is ready to retire very soon, should not be facing matters such as this right now, for doing everything that he could by talking to the highest possible people. Again, these are not actions of a tax cheat. Someone just says, I'm going to take this and I don't care what the consequences are. He spoke to the highest people. He was doing everything he possibly could to be able to follow the law and get clarification about what needed to be done. What should happen here, Your Honor, is that the injunction should be vacated, and this case should be remanded. Ultimately, dismissed would be our preference, because there are certainly tribal issues of good faith. In fact, the evidence presented shows that it was indeed acting in good faith with respect to this matter. But at a minimum, the injunction itself must be vacated so that this punitive action against appellant will cease immediately. Did he present the evidence of good faith in the injunction proceedings, the affidavit or otherwise? Absolutely, Your Honor. It's all set forth in the affidavits and in his declarations, all a part of the record. And that, in particular, I direct Your Honor's attention to, I believe it's Exhibit 26, when he talks about the letter that he sends to Christian Wood, which incorporates Exhibit 38, which is the communication that he had with Jim Hart of the GSA. The difficulty, well, one of the difficulties, you say that the injunction is overbroad. What does it stop him from doing? It stops him, it stops him from advising Alan Palmer, counsel for his billet, with respect to any matter before the tax court. It precluded him and precludes him from dealing with the various assessments where the people are being challenged right now in the Mariner's Decession. The language, what specific language? The specific language stops him from doing one thing, doesn't it? No, it does not, Your Honor. If I may, let me get the injunction. There is the provision in. I'm sorry, Your Honor, I had everything else, I got that. Well, provision in says that he's enjoying from representing customers in IRS audits, the United States Tax Court, or otherwise defending or advocating the position that mariners are entitled to claim tax deductions for meals that are not, that are provided to mariners without cost, which is what I assume you're talking about in being unable to prepare his defense, right? That's absolutely correct, Your Honor. And in the case, you're saying that takes away his ability to defend himself in these cases. And his clients. That's absolutely correct, Your Honor. And ultimately, given where we are with the state of the law, with the decision in his billet, and with the IRS's own notice provisions in 2008, there's no need for this injunction. Mr. Kapp would never take this action in light of this ruling. All he wanted was a distinct, clear ruling. Prior to the decision in the billet, there was no such decision. If it was so patently obvious that his decision was wrong, that you couldn't do this, then why didn't the tax court in his billet just say that? It says you can't do it because 162 precludes it. Instead, it went into a whole analysis under FTR 3117 and made an express finding that, well, we're dealing here with something that's not a common carrier. With the clear implication is that if it were a common carrier, the Federal Travel Regulation would indeed apply. For all these reasons, Your Honor, appellant requests that the injunction be vacated and that the matter be either dismissed outright because of the good faith of Mr. Kapp or that the matter be remanded for further proceeding before the State court. All right.  The U.S. v. Kapp will be submitted. We'll take up Lee v. Nikesi.
judges: Farris, Wardlaw, Schwarzer